**Merle O. GREENE, Jr., Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

Civ. No. 80–0162–CV–W.

United States District Court,
W. D. Missouri.

March 17, 1980.

Kenneth Josephson, Asst. U. S. Atty., Kansas City, Mo., for petitioner.

Robert G. Duncan, Kansas City, Mo., for respondent.

### MEMORANDUM and ORDER

VAN SICKLE, District Judge.

The petitioner has brought a motion under 28 U.S.C. § 2255 to vacate a conviction for violation of 18 U.S.C. § 1623.

 After providing for the granting of relief in appropriate cases, 28 U.S.C. § 2255 provides in part:

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

I find that the motion and files and records of the case conclusively show that the petitioner is entitled to no relief.

Petitioner pleads his case in this language:

"9. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:

(a) Members of my race—i. e., the negro race—were systematically excluded from serving on the jury that tried my case." Question 9, Petition for Writ.

Petitioner asserts his facts in this language:

"10. State concisely and in the same order the facts which support each of the grounds set out in (9):

(a) "Of the 28 potential jurors in the jury panel waiting to try the criminal charges against me, 5 were of the negro race. Both the Assistant U.S. Attorney and my attorney each exercised "strikes" or peremptory challenges, leaving 12 to serve as jurors. Of the six Assistant U.S. Attorney's "strikes," five were exercised against the five blacks on the panel, the jury that composed the panel was composed entirely of caucasians. (Please refer to attached affidavits)" Question 10, Petition for Writ.

There is nothing in the motion, and the files, and records of the case, considered in their entirety, which will support any inference that the facts provable will in any way exceed the facts asserted by the plaintiff. In that situation the case falls squarely within *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1964), and the discussion beginning at page 209, 85 S.Ct. at page 829. The Supreme Court held that Swain's motion to void the jury conviction of rape, and thus invalidate the alleged purposeful striking of Negroes from the jury selected to try a Negro defendant, was properly denied.

The decision in *Swain* has come under discussion, but has not, since its utterance, been changed. Nor would I be willing to erode the decision. Superficially thought out reforms can be much more harmful than a known and understood risk.

Two recent examples of the application of the doctrine of *Swain* are found in *U. S. v. Danzey*, 476 F.Supp. 1065 (E.D.N.Y. 1979), and *U. S. v. Newman*, 549 F.2d 240 (2nd Cir. 1977). In *Newman*, supra, the defendant went further than has Greene in this case, and asserted that there was a program of excessive challenges by the government against veniremen of the Black Race. This attack was consistent with the third section of the decision in *Swain*, beginning at 380 U.S. 222, 85 S.Ct. 836–37. In *Newman*, the Appellate Court reviewed the difficulty and the problems involved in establishing that kind of claim. The court then found that the lower court had no authority to control the government's exercise of peremptory challenges.

There is a thought provoking discussion of this problem in 92 Harvard Law Review 1770 (1979). The writer's approach to the problem can be deduced from her title:

"The Defendant's Right to Object to Prosecutorial Misuse of the Peremptory Challenge."

The writer of the above article makes the impressive point that the Defendant's use of the peremptory challenge should not be subject to the same scrutiny as that of the prosecutor. She argues:

"Unlike the prosecutor, the defendant is not a state actor, so her use of group stereotypes as the sole criterion for peremptory challenges in no way reflects state support for such conduct."

The writer suggests that appropriate remedies fall into three broad classes:

1. Reducing the number of challenges;
2. Broadening the voir dire;
3. Creating a right to a fair cross section of the populace in every petit jury.

An important function of the peremptory challenge is that it allows the litigant to participate, without interference, and without accountability to the court, in the selection of the jury of his peers, who will determine the guilt or innocence of the defendant. This is a populist concept, peculiar to the American's perception of his relation to government, and an important release valve for the criminal defendant. And any of the writer's remedies will create new unforeseeable problems. For example, dominance by an able attorney, and waste of time arising under an extended voir dire would arise under her second solution. The problem of defeat of the purpose of the peremptory challenge arises if one limits the number of peremptory challenges; and arises if one creates a new rule of right to a fair cross section of the populace in a petit jury.

In fact, one must expect that any attempt to alter the concept of the untrammeled peremptory challenge will create a cost of some kind.

An example of a less destructive way to assure against abuse of the peremptory challenge by the prosecutor, if abuse it be, would be to change Rule 23(a) of the Federal Rules of Criminal Procedure to provide that after selection of the jury, the defendant may, with the approval of the court, and without the consent of the government, waive jury trial, subject to such conditions as the court, in fairness to the government's presentation of its case, might impose.

IT IS ORDERED that the Motion to Vacate Judgment of Conviction is *denied.*